UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HANESBRANDS INC. and HBI BRANDED APPAREL ENTERPRISES, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> KEDS, LLC and SR HOLDINGS, LLC, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR: (1) TRADEMARK INFRINGEMENT, (2) UNFAIR COMPETITION & FALSE ASSOCIATION, (3) TRADEMARK DILUTION, (4) BREACH OF CONTRACT, (5) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, AND (6) UNFAIR AND DECEPTIVE TRADE PRACTICES IN VIOLATION OF MASSACHUSETTS GENERAL LAWS CHAPTER 93A** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Hanesbrands Inc. and HBI Branded Apparel Enterprises, LLC (collectively, "Hanes") for their Complaint against Defendants Keds, LLC and SR Holdings, LLC (collectively, "Defendants" or "Keds") allege as follows:

## I.    INTRODUCTION

### A.    The Champion Brand

1.    For approximately 100 years, the Champion brand has been synonymous with high-quality uniforms and apparel for amateur and professional athletes, as well as popular styles of sportswear and leisurewear for kids and adults.  Initially focused on functional sweaters, uniforms, and other apparel for collegiate athletic departments before the Second World War, Champion apparel—including t-shirts, sweatshirts, jackets, shorts, pants, and undergarments— has since been worn by millions of everyday people, celebrities, and professional and amateur athletes, and the Champion brand has become one of the most recognized sportswear brands in history.

2.      For example, following the Second World War, Champion Products, Inc. ("Champion") helped outfit thousands of soldiers who attended college under the GI Bill, including with t-shirts similar to those worn by soldiers during the war that they then helped popularize upon their return home:

 

*1946/47 examples of Champion T-shirt ads from The College Store magazine.*

3.      Between the 1940s and 1960s, Champion's collegiate apparel grew from a few styles of t-shirts, sweatshirts, jackets and accessories to many variations of each available for men, women, and children.  With Champion's help, for example, sweatshirts crossed over from athletics to become stylish campus fashion:

 

*1948 Champion ad from The College Store*                     *1953 Champion ad from The College Store*

2

4.     Between the late 1970s and early 1990s, Champion-branded apparel and athletic wear became Champion's best-selling items and must-have status-symbols, especially Champion's patented Reverse Weave sweatshirts, which paired the iconic Champion brand with quality workmanship and popular color options:



*Champion advertising from 1983 shown in the 1983 Annual Report*



*Spring 1994 Branded versions of the Reverse Weave*

5.     In 1990, Champion became the exclusive supplier of uniforms for every NBA team, and in 1992 provided the uniforms for the legendary USA "Dream Team" at the Summer Olympics:



*1992 Men's USA Basketball Team*

6.      Also in the late 1980s and early 1990s, the Champion brand exploded into popular culture, as music artists and licensed, replica athletic apparel helped propel Champion beyond athletic wear and into everyday life for millions of people around the world:

*From left to right: 1980s era EPMD, 1990s era TLC and Chuck D from Public Enemy in 1989 all wearing Champion gear.*





7.      Through these and myriad other examples, the Champion brand, aided by its distinctive CHAMPION trademarks—including the "Script Logo" and "C Logo" depicted below—has become one of the most iconic brands in history:

| Champion Script Logo | Champion C Logo |
|---|---|
|  |  |

8.　　In addition to the Script Logo and C Logo trademarks, each of which is the subject of multiple federal, incontestable registrations, Champion registered the wordmark CHAMPION and obtained common law trademark rights in CHAMPION, including by establishing secondary meaning in that wordmark as an exclusive indicator of Champion-branded apparel.　Champion and its successors-in-interest have used the CHAMPION trademarks in commerce continuously since the 1930s, and Hanes, which acquired the Champion brand in 2006, actively uses those marks today to market, promote, and sell Champion-branded apparel and accessories around the world.　*See, e.g.*, www.champion.com.

**B.　Champion's Expansion into Footwear and Shared Branding with Keds**

9.　　In or around 1987, Champion sought to expand into athletic footwear, a natural expansion given its long history of making and selling top-quality athletic apparel.　Because Keds owned certain rights to the "CHAMPION" trademark for footwear, however, Champion agreed to share the Champion brand with Keds for footwear only and in limited territories, *i.e.*, in the United States, Canada, and Puerto Rico.　That arrangement is set forth in a 1987 License Agreement (the "License Agreement") executed by Hanes' and Keds' (together, the "Parties") predecessors-in-interest.　As amended, that License Agreement remains in effect today.

10.　　For over 30 years, therefore, the Parties and their predecessors-in-interest have divided between them the commercial use of the CHAMPION trademark in connection with the manufacture, marketing, and sale of shoes and other footwear in the United States, Canada, and Puerto Rico.　Generally, Keds may use the CHAMPION trademark in connection with "casual

street and play time shoes" sold in those territories, while Hanes may use the CHAMPION trademark for athletic shoes in those territories. Hanes retains all rights to the CHAMPION trademark for apparel and other non-footwear categories.

11.     The License Agreement, however, did not similarly allocate rights to use the CHAMPION trademark in territories outside the United States, Canada, and Puerto Rico. Rather, within certain limitations (including that Keds would never use the iconic Champion Script Logo or use the CHAMPION mark in connection with athletic shoes), each party was permitted to seek trademark protections—CHAMPION for Hanes and KEDS CHAMPION for Keds—in foreign territories as it saw fit.

12.     In the intervening years, through official registrations and through substantial investment and widespread marketing, promotion, and distribution of its CHAMPION-branded shoes and apparel, Hanes' CHAMPION trademark has increasingly become widely recognized as the exclusive indicator of origin for CHAMPION-branded merchandise, including shoes, in jurisdictions around the world. For its part, Keds has obtained official registrations for the "KEDS CHAMPION" trademark in a handful of foreign jurisdictions (the "Limited Jurisdictions"),[1] initially limiting its use of the CHAMPION designation as a style name on packaging sold under the KEDS trademark.

13.     Notwithstanding Hanes' clear priority in most international jurisdictions, however, over time Keds' use of the CHAMPION trademark expanded in connection with the marketing and sale of shoes in territories where it does not have a registered KEDS CHAMPION trademark and/or where Hanes has superior rights to the CHAMPION mark.

---

[1] On information and belief, the Limited Jurisdictions are: Benelux, Brazil, France, Germany, Italy, Japan, Mexico, Spain, and the United Kingdom.

14.     The issue of Keds' unauthorized foreign use of the CHAMPION trademark arose in business discussions and contract negotiations between the Parties in or around 2017.   In short, Hanes was willing to grant Keds certain international rights to the CHAMPION trademark in exchange for a renegotiated License Agreement that would provide Hanes with, *inter alia*, additional rights and controls in connection with its CHAMPION-branded footwear.

15.     Although the Parties discussed this new arrangement in 2017 and Hanes proposed to renegotiate the License Agreement then and there, those renegotiations did not take place at the time.   Instead, in exchange for Hanes' temporary agreement not to contest Keds' ongoing "historic uses" of the CHAMPION trademark, Keds agreed in Section 7 of a Tenth Amendment to the License Agreement to engage in renegotiations of the License Agreement itself—the very thing Hanes had proposed.   And Keds further agreed that this temporary "moratorium" on Hanes contesting Keds' historic uses of the CHAMPION trademark would continue for five years from the effective date of that Tenth Amendment (*i.e.*, November 1, 2022) "or until renegotiation of the License Agreement, whichever occurs first."   Moreover, in that Section 7, Hanes preserved its position that Keds' historic uses of the CHAMPION trademark were improper and reserved the right to contest, without any conditions, any uses of the CHAMPION trademark that were in addition to such historic uses.

16.     Since the Parties executed the Tenth Amendment in January 2018, however, Keds has failed to engage in the promised renegotiations of the License Agreement.   Indeed, Keds has flatly refused to renegotiate, *all the while continuing* its improper "historic uses" of the CHAMPION trademark around the world and engaging in additional, unauthorized uses of that mark.   On information and belief, Keds has refused to renegotiate the License Agreement *for the express purpose* of improperly attempting to preserve the perceived "moratorium" on Hanes'

ability to contest Keds' foreign, historic uses of the CHAMPION trademark for as long as possible.

17.     Keds cannot shelter behind that would-be "moratorium" any longer.  As alleged herein, Keds' willful disregard of its known contractual obligations—actions which are intended to secure for Keds unwarranted benefits at Hanes' expense—constitute a material breach of Section 7 of the Tenth Amendment, a breach of the implied covenant of good faith and fair dealing, and unfair and deceptive trade practices under Massachusetts General Laws Chapter 93A, Section 11.

18.     Keds' breaches of contract and violations of law vitiate the Parties' agreement contained in Section 7 of the Tenth Amendment that Keds has thus far enjoyed but failed to uphold.  Accordingly, as a result of Keds' actions alleged herein, the temporary "moratorium" on Hanes' ability to contest Keds' "historic uses" of the CHAMPION trademark is no longer of any force and effect, and Hanes is relieved from further compliance with that moratorium.

19.     Through this Complaint, and as further alleged herein, Hanes therefore asserts its rights under the Federal Lanham Act in connection with Keds' improper and unauthorized uses of the CHAMPION trademark in jurisdictions around the world, challenging both Keds' "historic uses" (previously deferred pursuant to Section 7 of the Tenth Amendment) and Keds' additional unauthorized uses of the CHAMPION trademark beyond any such "historic uses," in excess of what Keds might be authorized to engage in under a duly registered "KEDS CHAMPION" mark in the Limited Jurisdictions.  In addition, as also alleged herein, Hanes asserts causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair and deceptive trade practices under Massachusetts General Laws Chapter

93A, Section 11.   Hanes seeks, among other things, injunctive relief and damages to remedy Defendants' unlawful conduct.

## II.   **THE PARTIES**

20.     Plaintiff Hanesbrands Inc. is a Maryland corporation with its principal place of business located at 1000 East Hanes Mill Road, Winston Salem, North Carolina, 27105.   In 1989, the Sara Lee Corporation ("Sara Lee") acquired Champion Products, Inc., a signatory to the 1987 License Agreement.   In 2006, Sara Lee restructured its holdings, including by spinning-off certain apparel-related assets—including Champion—into Hanesbrands Inc.   Since 2006, therefore, Hanes has owned the iconic Champion brand, together with the right to use the CHAMPION trademark on apparel, shoes, and accessories in the United States and around the world.

21.     Plaintiff HBI Branded Apparel Enterprises, LLC ("HBI Branded Apparel") is a Delaware Limited Liability Company with its principal place of business located at 1000 East Hanes Mill Road, Winston Salem, North Carolina, 27105.   A wholly-owned subsidiary of Hanesbrands Inc., HBI Branded Apparel is the owner of numerous CHAMPION trademarks by way of assignment from Sara Lee, including the CHAMPION trademarks asserted in this action. For example, HBI Branded Apparel is the owner of U.S. Trademark Registration Nos. 2319994 and 5096680 for the wordmark CHAMPION in Class 25 (the "Registered CHAMPION Wordmarks").   Bearing registration dates of February 22, 2000 and December 6, 2016, respectively, the Registered CHAMPION Wordmarks are currently active.   Registration No. 2319994 is incontestable.   Exhibit A attached hereto contains true and correct copies of the Certificates of Registration for the Registered CHAMPION Wordmarks.

22.     Hanes is informed and believes, and on that basis alleges, that Defendants are

Limited Liability Companies within the Wolverine World Wide, Inc. corporate family, having their principal places of business at 500 Totten Pond Road, Waltham, Massachusetts, 02451.

23.     Hanes is further informed and believes, and on that basis alleges, that Defendants manufacture, market, and sell shoes within this judicial district and around the world under the "Keds" brand.  *See, e.g.*, www.keds.com.   Most pertinent to this dispute, Defendants manufacture, market, and sell in international territories certain shoes as part of a "Champion Collection" or, simply, using the name "The Champion."

## III.   <u>JURISDICTION AND VENUE</u>

24.     This is a Complaint for (i) Trademark Infringement, Unfair Competition and False Association, and Trademark Dilution arising under Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§1114(1) and 1125(a) and (c), *et seq*., (ii) breach of contract and breach of the implied covenant of good faith and fair dealing under the laws of the State of Massachusetts, and (iii) Unfair and Deceptive Trade Practices arising under the Massachusetts General Laws Chapter 93A, Section 11.

25.     This Court has subject matter jurisdiction over Hanes' Lanham Act claims pursuant to 15 U.S.C. §1121, 28 U.S.C. §§1331, and 1338(a), and supplemental jurisdiction over Hanes' claims under Massachusetts law pursuant to 28 U.S.C. §1367.

26.     Moreover, this Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because there is complete diversity of citizenship as defined by 28 U.S.C. §1332(c).  For purposes of Section 1332, Plaintiffs are citizens of Maryland and North Carolina, see Paragraph 20, *supra*, as Hanesbrands Inc. is the sole member of HBI Branded Apparel.  And for purposes of Section 1332, on information and belief, Defendants Keds, LLC and SR Holdings, LLC, through their members, are citizens of Massachusetts.   The amount in

controversy, exclusive of interest and costs, exceeds the sum of $75,000.

27.     Venue is proper in this district pursuant to 28 U.S.C. §§1391(b) and (c), including because both Defendants reside in Massachusetts.

28.     This Court has personal jurisdiction over Defendants because Defendants have sufficient contacts with the State of Massachusetts.  In addition to conducting significant business within the State of Massachusetts, including negotiating, signing, and performing the contracts at issue in this dispute, as well as directing and conducting the business activities that form the basis of this Complaint, on information and belief Defendants' principal places of business are located in the State of Massachusetts and, therefore, Defendants are at home in Massachusetts for jurisdictional purposes.  *See, e.g.*, *Daimler AG v. Bauman*, 571 U.S. 117 (2014).

IV.     **FACTUAL BACKGROUND**

A.     **The 1987 License Agreement**

29.     As noted, the Parties are signatories to a License Agreement dated as of February 4, 1987.  After an initial term of between February 4, 1987 and December 31, 1996, the License Agreement has automatically renewed for an indefinite number of five-year renewal terms, each commencing on January 1st of the appropriate year and continuing unless and until the Agreement is terminated according to its terms.  The current five-year renewal term began on January 1, 2017, and the License Agreement remains in effect today.

30.     As set forth in the License Agreement, Keds holds certain domestic[2] rights to the CHAMPION trademark for footwear, *i.e.*, "rubber boots and shoes and rubber soles," but is only

---

[2] For simplicity, we use the term "domestic" to refer to the United States, Canada, and Puerto Rico, and the terms "foreign" or "international" to refer to the rest of the world.

permitted to use that mark in connection with the more narrow category of "casual street and play time shoes."  And under that agreement, Hanes has the right to use the CHAMPION trademark for certain athletic shoes both domestically and in any other country where "Keds may have acquired rights" in the CHAMPION trademark.

31.     Hanes' right to use the CHAMPION trademark for athletic shoes thus complements its extensive, long-standing rights—summarized above and existing separate and apart from its License Agreement with Keds—to use the CHAMPION trademark in connection with, *inter alia*, sportswear, leisurewear, and other apparel.  Since 2006, Hanes, like Champion and Sara Lee before it, has continuously and thoroughly exercised those rights and has used the CHAMPION trademark in all its forms in commerce in connection with these and many other products, including paired with the iconic slogan: "It takes a little more to make a Champion."

32.     For footwear, with some amendments, the Parties have operated in their defined areas of use under the License Agreement—casual shoes to Keds and athletic shoes to Hanes—within the United States, Canada, and Puerto Rico since 1987.  They continue to do so today.

33.     The License Agreement, however, did not similarly allocate rights to use the CHAMPION trademark in international territories.   Rather, the Agreement only addressed foreign uses of the CHAMPION trademark in limited ways:

       a.     First, as noted above, the License Agreement grants Hanes the right to use the CHAMPION trademark for athletic shoes in any country "where Keds may have acquired rights" in the CHAMPION mark for shoes;

       b.     Second, the License Agreement does not "preclude [Hanes] from using the trademark CHAMPION" for athletic shoes "in any country where Keds does not have rights in the mark and where [Hanes] may have acquired or will acquire superior rights in" that

trademark; and

> c.      Third, the License Agreement also does not "preclude [Hanes] from acquiring rights" in the CHAMPION trademark for athletic shoes "in those territories where Keds has not acquired trademark rights in CHAMPION for" such shoes.

34.     Notably, although Hanes has a perpetual license from Keds to use the CHAMPION trademark for athletic shoes in all territories where Keds may have acquired rights to that trademark for shoes and the License Agreement expressly acknowledges that Hanes may continue to acquire and exploit its own rights to the CHAMPION trademark in any jurisdiction, Keds *does not* hold a reciprocal license from Hanes.  As a result, Keds has expanded its use of the CHAMPION trademark in foreign jurisdictions at its peril.

**B.      The Parties' Co-Existence Arrangement under the License Agreement**

35.     Beginning in 1987, the Parties utilized the CHAMPION trademark in connection with their respective categories of footwear.  Although styled as a "License Agreement," the Parties' 1987 agreement thus reflects a co-existence arrangement, with each Party exploiting its own version of CHAMPION branding on its own segment of shoes—CHAMPION for Hanes on athletic shoes and KEDS CHAMPION for Keds on casual shoes.

36.     The Parties have entered into numerous amendments to the License Agreement.  Among other things, those amendments expanded the scope of footwear products in connection with which Hanes may use the CHAMPION trademark, approved Hanes sub-licensees and the terms to be included in various sublicenses, and modified royalty amounts, royalty minimums, and payments due to Keds in connection with sub-licensees' sales.

37.     Over time, however, the terms of the License Agreement and the sublicenses authorized by that Agreement failed to make commercial sense for Hanes given the Parties' co-

existence arrangement.  For example, notwithstanding that Keds and Hanes had operated in their own spheres of use and with their own version of CHAMPION branding, Keds retained approval rights over the appearance and design of Hanes' CHAMPION-branded athletic shoes and over Hanes' sublicense agreements through which retailers, for example, acquired the right to sell those athletic shoes.  In fact, on at least one occasion, Keds exercised its approval rights to prevent Hanes from launching a shoe that otherwise fell within Hanes' sphere of use—not, on information and belief, because it would infringe on Keds' contractual right to use the CHAMPION brand on its casual shoes, but to prevent Hanes from competing with another company within the Wolverine World Wide, Inc. corporate family.  Moreover, despite the independent strength of Hanes' Champion-branded athletic wear and the parties' separate spheres of use, Keds continued to make asymmetrical royalty demands, *i.e.*, demands that did not reflect the Parties' market positions with respect to the CHAMPION trademark.

38.     In or around 2017, Hanes proposed changes to the Parties' relationship that would enable both sides to operate more independently of the other with respect to the CHAMPION brand.  Specifically, Hanes proposed to either purchase Keds' CHAMPION trademark outright or to renegotiate the License Agreement to better reflect the parties' co-existence arrangement, with Hanes obtaining, *inter alia*, additional rights and controls in connection with its CHAMPION-branded footwear.

39.     In exchange, among other business terms, Hanes was prepared to document similar co-existence rights regarding the Parties' use of the CHAMPION trademark in foreign territories—an issue that had never been formalized and that Hanes had monitored with growing alarm as Keds' foreign use of the trademark expanded in territories where Keds had no rights, or inferior rights, to that mark as compared to Hanes.  Keds acknowledged its ongoing efforts to

better organize its trademark use around the world and expressed a desire for such international co-existence rights as part of a new agreement.

### C. The Tenth Amendment to the License Agreement

40.     The Parties' discussions on these subjects continued throughout late 2017 in conjunction with negotiations for a new Hanes sublicense to a third party.  Those discussions culminated in the Tenth Amendment to the License Agreement, executed in January 2018 and effective as of November 1, 2017.

41.     As noted, throughout the discussions surrounding the Tenth Amendment, Hanes sought to renegotiate the License Agreement and both Parties sought to clarify the parties' rights and relationship outside of the United States, Canada, and Puerto Rico.  Although Keds did not agree to immediately engage in that renegotiation, the Parties agreed to include the following language in what became Section 7 of the Tenth Amendment:

> Keds asserts that through many years of use without objection, it has acquired equitable rights to continue its historic uses of the CHAMPION word mark outside of the Territory. [3]  HBI disagrees with such assertion, and does not agree that Keds has any rights in the CHAMPION word mark outside of the Territory beyond any rights Keds may have in those jurisdictions where Keds has registered trademark rights to "KEDS CHAMPION".  In consideration of the execution of this Tenth Amendment by Keds, HBI hereby waives and releases Keds from all causes of action it may have stemming from or arising out of Keds's historic uses of the CHAMPION trademark outside of the Territory (and Keds's continued uses during the time period described below), such uses consisting primarily of use on shoeboxes, shoe tongue labels, and other venues (e.g., websites) as a product or collection name, and HBI agrees that HBI will not contest the continuance of such historic uses for sixty (60) months after the Tenth Amendment Effective Date, or until renegotiation of the License Agreement, whichever occurs first.  Such agreement by HBI to not contest the continuance of Keds's historic uses does not extend to any uses by Keds of the CHAMPION word mark which are in addition to such historic uses. Except as set forth above, this Section 7 is without prejudice to HBI's and Keds's rights and remedies, all of which are expressly reserved.

---

[3] The term "Territory" is specifically defined in the Tenth Amendment as the United States, Canada, and Puerto Rico.

**D.     Keds' Improper and Unauthorized Use of the CHAMPION Trademark**

42.     In the two-and-a-half years since the Parties executed the Tenth Amendment, Keds has exploited Hanes' temporary and conditional agreement, set forth in the foregoing language of Section 7, to refrain from contesting Keds' improper international use of the CHAMPION trademark.

43.     By way of example only, as late as 2017, Keds marketed its Champion line of shoes in Taiwan with (among others) the following promotional imagery:



44.     Since 2018, however, *i.e.*, after the Tenth Amendment, Keds has deliberately expanded its use of the CHAMPION trademark in connection with the marketing and sale of its shoes in foreign territories, including through more prominent use of the CHAMPION mark itself.  For example, since 2018 Keds has marketed its Champion line of shoes in Taiwan with (among others) the following promotional imagery:





45.     Notably, on information and belief, Keds has no registered trademark rights to "KEDS CHAMPION" or to any other use of the CHAMPION trademark in Taiwan.

46.     Similarly, Keds has marketed and promoted its shoes using the CHAMPION trademark without authorization in other jurisdictions as well, including in Austria and Korea, as depicted in the additional examples below:



47.     As these examples indicate, and as Keds itself acknowledged during the Parties'

discussions prior to the Tenth Amendment, for years Keds has used—and continues to use—the

CHAMPION trademark in foreign territories where it has *no* trademark rights or has *inferior*

trademark rights to those held by Hanes.  Keds has done so in both "historic uses," as described

in Section 7 of the Tenth Amendment, and in additional uses above and beyond what the Parties

contemplated in that Section 7 that Keds might exploit.

48.     At the same time, through official registrations and through substantial investment and widespread promotion and distribution of its CHAMPION-branded shoes and apparel, Hanes' use of its CHAMPION trademarks has grown throughout the world, such that those marks are recognized as the exclusive indicator of origin for Hanes' CHAMPION-branded merchandise.  For example, for decades Hanes (and Champion and Sara Lee before it) has used the CHAMPION trademark to identify its products (including shoes) and to distinguish its products from those made and sold by others, including by prominently displaying the mark on its products and packaging, on in-store displays, on print and digital advertising, and through retail, wholesale, and distribution networks throughout the world—all of which Hanes has done in jurisdictions where Keds has expanded its unauthorized use of the CHAMPION trademark.

### E.     Keds' Improper Refusal to Engage in Renegotiations of the License Agreement

49.     While exploiting Hanes' temporary and conditional agreement to refrain from contesting Keds' "historic uses" of the CHAMPION trademark, Keds has refused to engage in a renegotiation of the License Agreement as promised in Section 7 of the Tenth Amendment.

50.     Moreover, notwithstanding the Parties' explicit agreement that any moratorium on Hanes' ability to contest Keds' "historic uses" of the CHAMPION trademark would continue only for five years "after the Tenth Amendment Effective Date, *or until renegotiation of the License Agreement, whichever occurs first*" (emphasis added), Keds has conditioned any renegotiation on Hanes' agreement that such negotiations would *not terminate* that moratorium, which Keds so values.  Unwilling to forego the benefits of the bargain it made in 2017, Hanes has not agreed to those conditions.

51.     Indeed, in refusing to renegotiate the License Agreement without new conditions never previously bargained-for or agreed-upon, Keds has wrongfully deprived Hanes of the full

benefits it secured in Section 7 of the Tenth Amendment, *i.e.*, the negotiations promised in that Section on which Hanes' temporary agreement not to contest Keds' "historic uses" of the CHAMPION trademark was expressly contingent.

52.     By knowingly and intentionally failing to uphold its part of the Parties' bargain set forth in Section 7 of the Tenth Amendment, Keds has acted in willful disregard of its known contractual arrangements and obligations to Hanes in order to secure benefits for itself at Hanes' expense.

53.     For example, as early as April 2018, mere months after executing the Tenth Amendment, Hanes again attempted to engage Keds regarding an outright purchase of Keds' limited rights to the CHAMPION trademark.  Although it did not dispute the underlying analysis Hanes presented, Keds did not substantively engage in discussions regarding the Parties' relationship in general or the License Agreement in particular.  Furthermore, Keds delayed and avoided any such substantive discussions until Hanes again raised the issue and requested an in-person meeting, which occurred in May 2019.

54.     At that meeting, Keds explained to Hanes that its interest in the CHAMPION trademark was not solely driven by a would-be purchase price, but was inextricably tied to the ongoing royalties Keds stood to gain from the perpetual License Agreement with Hanes.  Willing to be flexible, Hanes wrote to Keds *the day after* that in-person meeting in May 2019 and again attempted to engage Keds in a discussion of a modified co-existence agreement that would afford Hanes more financial and operational flexibility in growing its domestic footwear business while preserving a revenue stream for Keds and permitting the expansion of Keds' trademark rights in foreign territories—precisely the discussions the Parties had in 2017 and precisely the discussions in which Keds agreed to engage in Section 7 of the Tenth Amendment.  Again,

however, despite repeated prompts from Hanes, months passed without a response from Keds, let alone a substantive response.  And when Keds finally responded in or around September 2019, it merely conveyed its lack of interest in pursuing the issue further.

55.     As recently as March 2020, Hanes again tried to engage Keds in the negotiations required under Section 7 of the Tenth Amendment.  Specifically, in connection with discussions regarding another Hanes sublicense (which would become the Twelfth Amendment, an Eleventh Amendment having been executed in 2018), and given the difficulty it had encountered in bringing Keds to the negotiating table to discuss the License Agreement, Hanes sought to include in the Twelfth Amendment language that would have required those negotiations to occur between March and December 2020, with the understanding that, if the Parties were unsuccessful, then Hanes' temporary agreement not to contest Keds' international use of the CHAMPION trademark would be of no further force and effect.  Again, Keds refused, demanding the wholesale removal of Hanes' proposed language from the draft Twelfth Amendment.

56.     In doing so, Keds' representatives made explicitly clear to Hanes that Keds *will not renegotiate* the License Agreement as promised and, moreover, that its refusal to do so is intended to preserve for as long as possible the perceived "moratorium" on Hanes' ability to contest Keds' foreign use of the CHAMPION trademark.

57.     Neither the Tenth Amendment nor the law, however, permits Keds to act with such willful disregard of its known contractual obligations, let alone to secure for Keds unwarranted benefits at Hanes' expense.  By its wrongful conduct, Keds has, *inter alia*, materially breached the Tenth Amendment and violated Massachusetts law, including by repudiating Section 7 of the Tenth Amendment and its obligations thereunder, thereby vitiating

and waiving any protections it might have had under Section 7 of that Amendment and relieving Hanes of further performance under Section 7 of that Amendment.  Accordingly, as a result of Keds' actions alleged herein, Hanes' temporary agreement not to contest Keds' "historic uses" of the CHAMPION trademark is no longer of any force and effect.

58.     Based on the foregoing allegations and as further outlined below, and because Hanes has been and continues to be damaged by Defendants' conduct, Hanes asserts the following causes of action against Defendants:

**FIRST CAUSE OF ACTION**
**Trademark Infringement (15 U.S.C. § 1114 and 1125(a))**

59.     Hanes re-alleges and incorporates paragraphs 1-58 set forth above as if set forth in full herein.

60.     Defendants have and continue to use the Registered CHAMPION Wordmarks, or colorable imitations thereof, in excess of any authorized use of "KEDS CHAMPION" in the Limited Jurisdictions, in commerce on or in connection with sales, offers for sale, distribution, and advertising of shoes in numerous foreign jurisdictions.

61.     Defendants' use of the Registered CHAMPION Wordmarks in excess of any authorized use of "KEDS CHAMPION" in the Limited Jurisdictions is without Hanes' consent or approval, and that use is misleading and likely to cause confusion, mistake, or deception and constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

62.     Above and beyond Hanes' protectable interests in the Registered CHAMPION Wordmarks, the CHAMPION trademark is distinctive and, by virtue of the substantial investment and widespread promotion, distribution, and sales of CHAMPION-branded footwear, apparel, and accessories for approximately 100 years, has acquired distinctiveness and is widely

recognized around the world as an exclusive indicator of origin for CHAMPION-branded merchandise.

63.     Defendants have and continue to use the CHAMPION trademark, or a colorable imitation thereof, in excess of any authorized use of "KEDS CHAMPION" in the Limited Jurisdictions, in commerce in connection with their own promotion, distribution, and sales of shoes in numerous foreign jurisdictions.

64.     Defendants' use of the CHAMPION trademark in excess of any authorized use of "KEDS CHAMPION" in the Limited Jurisdictions is without Hanes' consent or approval, and that use is misleading and likely to cause confusion, mistake, or deception and constitutes trademark infringement in violation of Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A).

65.     Defendants' selection and continued use of the CHAMPION trademark in excess of any authorized use of "KEDS CHAMPION" in the Limited Jurisdictions was made with full knowledge of the prior and extensive use by Hanes of the CHAMPION trademark and of Defendants' lack of and/or inferior rights in the CHAMPION trademark, and was done with a conscious intent to confuse the consuming public.

66.     Defendants' acts alleged herein are willful and deliberate and have harmed, and continue to harm, Hanes in an amount to be determined at trial and such damage will increase unless Defendants are enjoined from their wrongful actions.

67.     Defendants' infringing use of the CHAMPION trademark in excess of any authorized use of "KEDS CHAMPION" in the Limited Jurisdictions is causing immediate and irreparable injury to Hanes and to its goodwill and reputation and will continue to damage Hanes and confuse the public unless enjoined by this Court.  Hanes has no alternative remedy at law to an injunction.

68.     Defendants' acts alleged herein have a significant effect on United States commerce.  For example, both Hanes and Defendants are organized and have their principal places of business within the United States and are parties to contracts, governed by Massachusetts law, that relate to the CHAMPION trademark and are performed, in large part, in the United States.  In addition, to preserve the purported right to engage in the acts alleged herein, Defendants have refused to engage in contractually-mandated negotiations with Hanes, negotiations which would affect the Parties' commercial activity within the United States, thereby interfering with Hanes' ability to conduct business within the United States.  Furthermore, on information and belief, revenue derived by Defendants from the acts alleged herein returns to the United States through United States banking institutions to Defendants and their corporate affiliates in the United States.

69.     Moreover, on information and belief, the acts alleged herein, including Defendants' international marketing and promotion of their CHAMPION-branded shoes, are taken and/or directed from the United States, including from Defendants' Massachusetts locations.  And, also on information and belief, Defendants design and manufacture their CHAMPION-branded shoes in the United States, including product intended and destined for sale in the foreign jurisdictions complained of herein.

70.     Defendants' acts alleged herein present a cognizable injury to Hanes under the Lanham Act, including in the United States.  For example, irrespective of the location of Defendants' marketing and promotion of their CHAMPION-branded shoes, much of which occurs on the Internet (including social media), the consuming public has been and will continue to be confused as to the origin of CHAMPION-branded footwear.  Moreover, as Hanes also markets and promotes its authentic CHAMPION-branded footwear in the jurisdictions

complained of herein, consumer confusion, harm to Hanes' goodwill, resulting loss of sales and revenue, decrease in value of the CHAMPION trademarks, and other harms incurred by Hanes affect Hanes in the United States.

71.     This Court, and the United States, has a strong interest in addressing Defendants' extraterritorial violations of the Lanham Act complained of herein.  For example, all Parties are United States entities, no related foreign litigation is underway, the judgment of this Court can and will be enforced in the United States, the United States has a strong interest in enforcing the rights of its citizens under its laws, and United States commerce is significantly and foreseeably affected by Defendants' conduct alleged herein.

## SECOND CAUSE OF ACTION
### Unfair Competition and False Association (15 U.S.C. § 1125(a)(1)(A))

72.     Hanes re-alleges and incorporates paragraphs 1-71 set forth above as if set forth in full herein.

73.     Defendants' acts alleged herein, including without limitation Defendants' unauthorized use of the CHAMPION trademark in connection with their promotion, distribution, and sales of shoes in excess of any authorized use of "KEDS CHAMPION" in the Limited Jurisdictions, constitute unfair competition and false association in violation of 15 U.S.C. § 1125(a)(1)(A).

74.     Consumers are likely to be misled and deceived into believing, based on Defendants' representations and conduct in connection with their promotion, distribution, and sales of CHAMPION-branded shoes, that Defendants' shoes are associated with, sponsored, or approved by Hanes when no such association, sponsorship, or approval exists.

75.     Defendants' selection and continued use of the CHAMPION trademark in excess of any authorized use of "KEDS CHAMPION" in the Limited Jurisdictions was made with full

knowledge of the prior and extensive use by Hanes of the CHAMPION trademark and of Defendants' lack of and/or inferior rights in the CHAMPION trademark, and was done with a conscious intent to mislead and deceive the consuming public.

76.     Defendants' acts alleged herein were willful and deliberate and have harmed Hanes in an amount to be determined at trial and such damage will increase unless Defendants are enjoined from their wrongful actions.

77.     Defendants' infringing use of the CHAMPION trademark is causing immediate and irreparable injury to Hanes and to its goodwill and reputation and will continue to damage Hanes and confuse the public unless enjoined by this Court.  Hanes has no alternative remedy at law to an injunction.

## THIRD CAUSE OF ACTION
### Trademark Dilution (15 U.S.C. § 1125(c))

78.     Hanes re-alleges and incorporates paragraphs 1-77 set forth above as if set forth in full herein.

79.     The CHAMPION trademark has acquired distinctiveness and is widely recognized around the world as a well-known, famous, and exclusive indicator of origin for CHAMPION-branded merchandise.  Moreover, the CHAMPION trademark acquired such fame and distinctiveness prior to Defendants' acts alleged herein, including without limitation Defendants' unauthorized use of the CHAMPION trademark in connection with their promotion, distribution, and sales of shoes in excess of any authorized use of "KEDS CHAMPION" in the Limited Jurisdictions.

80.     Defendants' acts alleged herein, including without limitation Defendants' unauthorized use of the CHAMPION trademark in connection with their promotion, distribution, and sales of shoes in excess of any authorized use of "KEDS CHAMPION" in the Limited

Jurisdictions, are likely to cause dilution by blurring in violation of 15 U.S.C. § 1125(c), including by creating a likelihood of association with the CHAMPION trademark on account of similarity with that mark.  Such acts are therefore likely to erode and impair the distinctiveness of the CHAMPION trademark and the consuming public's exclusive association of that mark with Hanes.

81.     Defendants' acts alleged herein were willful and deliberate and have harmed Hanes in an amount to be determined at trial and such damage will increase unless Defendants are enjoined from their wrongful actions.

## FOURTH CAUSE OF ACTION
### Actual and Anticipatory Breach of Contract

82.     Hanes re-alleges and incorporates paragraphs 1-81 set forth above as if set forth in full herein.

83.     Hanes and Defendants are parties to the License Agreement and the Tenth Amendment, each a valid and enforceable contract.

84.     Hanes has fully performed under the License Agreement and the Tenth Amendment.

85.     Defendants have breached their obligations under the Tenth Amendment, particularly by refusing and failing to engage in renegotiations to-date regarding the License Agreement as required by Section 7 of that amendment.

86.     In addition, Defendants have further breached the Tenth Amendment by repudiating Section 7 of that amendment and their obligations thereunder, particularly by definitively and unequivocally manifesting their intent not to renegotiate the License Agreement prior to the expiration of the Tenth Amendment in November 2022.

87.     As a direct and proximate result of Defendants' breaches, Hanes has been

damaged in an amount to be determined at trial and/or is entitled to specific performance, in equity, of Section 7 of the Tenth Amendment.

### FIFTH CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing

88.     Hanes re-alleges and incorporates paragraphs 1-87 set forth above as if set forth in full herein.

89.     As parties to the License Agreement and the Tenth Amendment, Defendants are bound by the covenant of good faith and fair dealing.

90.     Including as set forth above, Defendants have breached the covenant of good faith and fair dealing by acting, for their own gain, to deprive Hanes of the rights and benefits of the Tenth Amendment and to unfairly leverage the terms of that Amendment to secure an undue economic advantage for themselves.

91.     As a direct and proximate result of Defendants' breaches, Hanes has been damaged in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION
### Unfair and Deceptive Trade Practices
### Massachusetts General Laws Chapter 93A, Section 11

92.     Hanes re-alleges and incorporates paragraphs 1-91 set forth above as if set forth in full herein.

93.     At all relevant times, Hanes and Defendants were engaged in the conduct of trade or commerce, including through their contractual, business relationship as described above.

94.     Defendants have been engaged in inequitable market conduct that constitutes an unfair method of competition and/or an unfair or deceptive act or practice within the meaning of Massachusetts General Laws Chapter 93A, § 2.

95.     Defendants' unfair method of competition and/or unfair and deceptive acts

(the "Unfair and Deceptive Acts") occurred primarily and substantially within the Commonwealth of Massachusetts, including without limitation because Defendants' principal places of business are located in Massachusetts and Defendants committed the Unfair and Deceptive Acts in Massachusetts.

96.     As a result of Defendants' purposeful, willful, and knowing Unfair and Deceptive Acts, Hanes has been injured, has suffered loss and damages, and will continue to suffer injury, loss and damages in an amount to be proven at trial.

97.     Because of Defendants' purposeful, willful, and knowing Unfair and Deceptive Acts, including without limitation their disregard of known contractual obligations intended to secure themselves unwarranted benefits at Hanes' expense, Hanes has suffered financial harm and is entitled to treble and exemplary damages as well as to reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Hanes prays for judgment against Defendants as follows:

1.     That preliminary and permanent injunctive relief issue restraining Defendants, their officers, agents, servants, employees, representatives, successors and assigns, attorneys, and all those in active concert or participation with them from:

a)     directly or indirectly infringing on the CHAMPION trademark in the marketing, promotion, distribution, and/or sale of any apparel or footwear in excess of any authorized use of "KEDS CHAMPION" in the Limited Jurisdictions; and

b)     otherwise engaging in acts of unfair competition and unfair trade practices in connection with the CHAMPION trademark.

2.     That Defendants shall cease the use of the CHAMPION trademark on all apparel

or footwear in excess of any authorized use of "KEDS CHAMPION" in the Limited Jurisdictions;

3.      That Hanes be awarded compensatory damages in an amount according to proof and/or specific performance by Defendants.

4.      That Hanes be awarded its actual damages and Defendants' profits as calculated pursuant to 15 U.S.C. §1117(a);

5.      That Hanes be awarded its reasonable attorneys' fees pursuant to 15 U.S.C. §1117(a),

6.      That Hanes be awarded its costs in bringing this action,

7.      That Hanes be awarded treble damages and reasonable attorneys' fees and costs pursuant to Massachusetts General Laws, Chapter 93A, §11;

8.      That Hanes be awarded prejudgment and post-judgment interest to the fullest extent allowable by law; and

9.      That Hanes be awarded all such other and further relief as the Court deems just and proper.

DATED:  July 17, 2020              By:  */s/ Bryan H. Parr*
                                          Bryan H. Parr (BBO No. 670689)
                                          PAUL HASTINGS LLP
                                          2050 M Street NW
                                          Washington, D.C. 20036
                                          Telephone:       (202) 551-1700
                                          Facsimile:        (202) 551-1705
                                          bryanparr@paulhastings.com

                                          Jeffrey F. Webb (BBO No. 674478)
                                          PAUL HASTINGS LLP
                                          515 South Flower Street, 25th Floor
                                          Los Angeles, CA, 90071
                                          Telephone:       (213) 683-6000
                                          Facsimile:        (213) 627-0705
                                          jeffwebb@paulhastings.com

Attorneys for Plaintiffs Hanesbrands Inc. and
HBI Branded Apparel Enterprises, LLC

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b) and the Local Rules of this Court, Hanes demands a trial by jury of all issues so triable.


DATED:  July 17, 2020                    By:  */s/ Bryan H. Parr*
                                              Bryan H. Parr (BBO No. 670689)
                                              PAUL HASTINGS LLP
                                              2050 M Street NW
                                              Washington, D.C. 20036
                                              Telephone:        (202) 551-1700
                                              Facsimile:        (202) 551-1705
                                              bryanparr@paulhastings.com

                                              Jeffrey F. Webb (BBO No. 674478)
                                              PAUL HASTINGS LLP
                                              515 South Flower Street, 25th Floor
                                              Los Angeles, CA, 90071
                                              Telephone:        (213) 683-6000
                                              Facsimile:        (213) 627-0705
                                              jeffwebb@paulhastings.com

                                              Attorneys for Plaintiffs Hanesbrands Inc. and
                                              HBI Branded Apparel Enterprises, LLC

# Exhibit A



## CERTIFICATE OF REGISTRATION
### PRINCIPAL REGISTER

*The Mark shown in this certificate has been registered in the United States Patent and Trademark Office to the named registrant.*

*The records of the United States Patent and Trademark Office show that an application for registration of the Mark shown in this Certificate was filed in the Office; that the application was examined and determined to be in compliance with the requirements of the law and with the regulations prescribed by the Commissioner of Patents and Trademarks; and that the Applicant is entitled to registration of the Mark under the Trademark Act of 1946, as Amended.*

*A copy of the  Mark and pertinent data from the application are part of this certificate.*

*This registration shall remain in force for TEN (10) years, unless terminated earlier as provided by law, and subject to compliance with the provisions of Section 8 of the Trademark Act of 1946, as Amended.*



*Commissioner of Patents and Trademarks*

Int. Cl.: 25

Prior U.S. Cls.: 22 and 39

**United States Patent and Trademark Office**

Reg. No. 2,319,994
Registered Feb. 22, 2000

## TRADEMARK
### PRINCIPAL REGISTER

## CHAMPION

CHAMPION PRODUCTS, INC. (NEW YORK CORPORATION)
475 CORPORATE SQUARE DRIVE
WINSTON-SALEM, NC 27105 , BY ASSIGNMENT SARAMAR CORPORATION (DELAWARE CORPORATION) DOVER, DE 19901

FOR: PHYSICAL EDUCATION UNIFORMS, ATHLETIC UNIFORMS, SWEATSHIRTS, SWEATPANTS, SWEATERS, T-SHIRTS, SOCKS, SHORTS, PANTS, JERSEYS, BATHROBES, SLEEPWEAR, COVERUPS, BRAS, PARKAS, TOPS AND BOTTOMS FOR USE IN AEROBICS, SHIRTS, WARM-UP SUITS, JACKETS, VESTS, WIND RESISTANT PANTS AND JACKETS, REPLICA ATHLETIC JERSEYS, SINGLETS, TIGHTS, BELTS, HEADBANDS, WRISTBANDS, UNDERWEAR, HATS, CAPS, TANK TOPS, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 12–31–1952; IN COMMERCE 12–31–1952.

OWNER OF U.S. REG. NOS. 274,178, 1,860,938 AND OTHERS.

SER. NO. 75–197,749, FILED 11–12–1996.

ANDREW A. ROPPEL, EXAMINING ATTORNEY

# United States of America

## United States Patent and Trademark Office

# CHAMPION

**Reg. No. 5,096,680**

**Registered Dec. 06, 2016**

**Int. Cl.: 25**

**Trademark**

**Principal Register**

HBI Branded Apparel Enterprises, LLC (DELAWARE LIMITED LIABILITY COMPANY)
1000 East Hanes Mill Road
Winston-Salem, NC 27105

CLASS 25: Athletic uniforms; Brassieres; Caps; Gloves; Hats; Jackets; Jerseys; Leggings; Pants; Scarves; Shirts; Shorts; Socks; Sweatpants; Sweatshirts; T-shirts; Tank tops; Thermal underwear; Tights; Underwear; Vests

FIRST USE 12-31-1952; IN COMMERCE 12-31-1952

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

OWNER OF U.S. REG. NO. 4230988, 2319994

SER. NO. 86-737,815, FILED 08-26-2015
AMY ALFIERI MARCY, EXAMINING ATTORNEY



Director of the United States
Patent and Trademark Office